STATE OF CONNECTICUT *v.* ISTVAN TOTH
(10387)

DALY, FOTI and LAVERY, Js.

844

Argued September 16, 1992—decision released January 5, 1993

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant, Istvan Toth, was charged by substitute information with the crimes of possession of cocaine and heroin with intent to sell in violation of General Statutes § 21a-277 (a) and conspiracy to violate the state dependency producing drug law in violation of General Statutes §§ 53a-48, 21a-277 (a), and 21a-279 (a) and (c).[1] Following a jury trial, the defend-

---

[1] General Statutes § 53a-48 provides in pertinent part: "CONSPIRACY. . . . (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

General Statutes § 21a-277 provides in pertinent part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses,

ant was found not guilty of the possession count but guilty of the conspiracy count. The trial court sentenced the defendant to a twelve year prison term.

In this appeal from the judgment of conviction, the defendant claims that the trial court improperly (1) denied his motion to suppress certain evidence obtained during unreasonable searches and seizures, (2) failed to define an essential element of the offense of conspiracy as it was alleged in the information, and (3) failed to define adequately the overt act element of the offense of conspiracy. We affirm the trial court's denial of the motion to suppress, but reverse the judg-

compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned. . . ."

General Statutes § 21a-279 provides in pertinent part: "PENALTY FOR ILLEGAL POSSESSION. . . . (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, of be both fined and imprisoned. . . .

"(c) Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marihuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned. . . ."

ment of conviction on the basis of the trial court's failure to define in its jury instructions an essential element of the crime of conspiracy as it was alleged in the information.

The state's case was premised on the defendant's alleged involvement in a large-scale drug trafficking operation taking place in Bridgeport and surrounding towns. In June, 1989, a first time confidential informant advised Bridgeport police detectives Gladys Doran and Rafael Villegas that the defendant was selling heroin from various locations in Bridgeport and Stratford. The informant said he had purchased heroin from the defendant on dozens of occasions at these locations. The defendant was put under surveillance and during the week of June 11, 1989, the informant, pursuant to Doran and Villegas' instructions, went to two of the Bridgeport locations, 57 Westfield Avenue, the home of Robert Petrino, and 900 Wood Avenue, the home of Leon Goulet. At both locations, the informant purchased cocaine from Petrino. Later that week, on June 13, 1989, Doran and Villegas observed the defendant drive to 57 Westfield Avenue in a blue Oldsmobile, enter Petrino's first floor apartment, leave after five or six minutes, then drive by Goulet's home at 900 Wood Avenue, enter that home and leave shortly thereafter.

On June 20, 1989, Doran and Villegas submitted three substantially similar affidavits and applications for search warrants to the Superior Court, requesting authorization to search the defendant's person, his apartment at 28 Newport Avenue in Stratford, and his mother's blue Oldsmobile. Simultaneously, warrants were sought to search the homes of Joel Campofiore, Leon Goulet and Robert Petrino. The items sought under each warrant specifically related to the crime of

possession of narcotics with intent to sell. All of the requested warrants were issued by the reviewing magistrate.[2]

On June 22, 1989, Stratford and Bridgeport police officers executed a search of the defendant's apartment. They seized a small amount of marihuana from a bedroom dresser, a police scanner capable of receiving radio signals from both the Stratford and Bridgeport police departments, and two separate amounts of cash totaling approximately $2400 and $52.

On June 22 and June 27, 1989, Fairfield police conducted drive-by surveillance of the Fairfield home of Joel Campofiore, at 74 Rhode Island Avenue. On both occasions they noticed a 1982 blue Oldsmobile registered to the defendant's mother parked in front of the residence. At trial, a neighbor testified that on several occasions he had seen the driver of a blue car stop in front of Campofiore's home, enter it, stay for about ten minutes and then leave, at times carrying something. The driver would sometimes return several hours later, reenter the house, leave again, sometimes carrying small items.

On June 29, 1989, members of the Bridgeport, Fairfield and Trumbull police departments jointly executed a search warrant at Campofiore's home. The search yielded a large quantity of drugs consisting mostly of cocaine, as well as some heroin and marihuana. The drugs were taken from a variety of locations in the home, including a stereo speaker, a kitchen cabinet, and the agitator of the washing machine. Also seized was a video tape that was later entered into evidence and shown to the jury. At the time of the search, Campofiore was arrested a few blocks from his home, and marihuana was seized from his truck.

---

[2] More facts pertaining to the warrant affidavits and applications will be discussed later in this opinion, in our review of the trial court's denial of the motion to suppress.

Campofiore, who testified on behalf of the state as part of a plea bargain agreement, stated at trial that the defendant, a long time friend, had a key to the Rhode Island Avenue home because he kept his motorcycle there. He also testified that all of the drugs seized during the search of that home belonged to the defendant, who had put them there, and that he, Campofiore, was trying to sell the drugs for the defendant. Campofiore admitted to using cocaine supplied by the defendant and testified that the defendant told him that he could supply Campofiore with heroin. The defendant, Campofiore testified, was a heroin addict who supported his habit by selling drugs.

The video tape seized by police during the search of Campofiore's home recorded a meeting between the defendant, Campofiore and Joseph Mandel. The meeting was recorded by Campofiore and took place five or six months before the house was searched. The tape shows Campofiore explaining that he and the defendant would give Mandel $500 worth of drugs to sell every week and that Mandel could keep $100 and return $400. During this conversation, the defendant is seen nodding his head up and down. The film shows the defendant leaving, and then Campofiore and Mandel snorting cocaine that Campofiore testified the two had obtained from the defendant.

During the search of Campofiore's home, Bridgeport police detectives Villegas and William Perez observed the defendant drive up to the house. As he approached, he stopped suddenly, backed up and sped away. The officers, with strobe lights and sirens on, gave chase, but lost sight of the defendant as they approached an entrance ramp to Interstate 95. Soon after, the defendant was stopped by Bridgeport police. Pursuant to separate warrants, both the defendant and his mother's car were searched. Nothing was taken from the car; $497 was taken from the defendant's person.

# I

We first address the propriety of the trial court's denial of the defendant's motion to suppress evidence seized pursuant to search warrants executed on June 22 and June 29, 1989. The defendant claims that the trial court incorrectly ruled that the warrant affidavits established probable cause to search, in violation of his right to be free from unreasonable search and seizure under the fourth and fourteenth amendments to the United States constitution[3] and article first, § 7, of the Connecticut constitution.[4] Specifically, the defendant claims that the warrant affidavits, which relied largely on information obtained from confidential informants, including a first time confidential informant, were fatally flawed by the absence of any reference to the informants' bases of knowledge and reliability, and are thus based on "mere suspicion." As such, the defendant claims, they cannot pass constitutional muster under the "totality of the circumstances" standard set forth in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), and adopted by our Supreme Court in *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991). The defendant properly preserved this claim for appellate review.

---

[3] The fourth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment in *Wolf* v. *Colorado,* 338 U.S. 25, 28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[4] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

We first set forth the standard applicable to review of the magistrate's probable cause determination. "When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." *State* v. *Barton,* supra, 544–45. On the other hand, "[i]f a warrant affidavit does not provide a substantial basis for the finding of probable cause, then evidence or contraband seized in the execution of that warrant will be suppressed, even when the officer executing the warrant has relied in good faith on its authority. *State* v. *Marsala,* 216 Conn. 150, 171, 579 A.2d 58 (1990)." Id., 545.

Our own scope of review, in determining whether a substantial factual basis was demonstrated for the issuing authority to find probable cause to issue a warrant, "is limited to the facts that appear within the four corners of the affidavit or facts that may properly be inferred from those facts." *State* v. *Anziano*, 26 Conn. App. 667, 672, 603 A.2d 415 (1992). "Our role 'is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed.' *State* v. *Johnson*, [219 Conn. 557, 565, 594 A.2d 933 (1991)]." Id.

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . It is a flexible common sense standard that does not require the police officer's belief to be either correct or more likely true than false. . . . There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information sufficient to justify the belief of a reasonable person that an offense has been or is being committed." (Citations omitted; internal quotation marks omitted.) *State* v. *Stevens*, 26 Conn. App. 805, 810–11, 603 A.2d 1203, cert. granted, 221 Conn. 926, 608 A.2d 691 (1992).

When an affidavit in support of a search warrant is based on information supplied by confidential informants, the test to be applied is whether the "totality of the circumstances" supports the existence of probable cause. *Illinois* v. *Gates*, supra; *State* v. *Barton*, supra. Even under this test, however, the confidential informant's "basis of knowledge" and "reliability" remain highly relevant to the determination of probable cause.

We now examine the warrant affidavits challenged by the defendant in light of these standards. We agree

that the affidavits do not specifically state the informants' bases of knowledge or explicitly indicate how the affiants determined that the tips were reliable. Probable cause, however, "does not depend upon the incantation of certain magic words." *State* v. *Barton,* supra, 549. We conclude that there were substantial facts and circumstances in the affidavits from which the magistrate could reasonably infer that the informants' statements were based on personal knowledge and that these statements were reliable.

The affidavits stated that several informants whose identities were not disclosed had described the defendant as the head of a large scale heroin trafficking operation with numerous dealers working for him selling drugs from various locations. The informants had named Petrino as one of the dealers. The affiants then met with one of the informants, who corroborated the other informants' characterization of the defendant as the distributor of the drugs and of Petrino and Goulet as his dealers. This first time informant indicated that he had accompanied the defendant to the defendant's residence, where the defendant picked up packages for delivery. He also stated that the defendant had delivered bundles of drugs to him.

We conclude that the affidavits contained facts providing a substantial basis for the magistrate to infer that this informant's tip was reliable and based on personal knowledge. The informant was not anonymous; his identity was not disclosed. "Because his identity was known to the police, the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for the class A misdemeanor of falsely reporting an incident under General Statutes § 53a-180, had the information supplied proved to be a fabrication." *State* v. *Barton,* supra, 550–51. It was against

the informant's penal interest to offer this tip to the police. The informant had admitted that he had obtained illegal narcotics numerous times from the defendant and his dealers. The fact that he was a first time informant does not necessarily make his tip less reliable. Were police unable to rely on information obtained from first time informants, they would be deprived of an important resource in their criminal investigations.

Even if "the suspicions engendered by [the] informant's tip would not have independently justified the issuance of a warrant . . . 'the magistrate was not required to disregard the tip altogether, but could consider whether the tip and the [information gathered by independent police] investigation together "bridged the gap" between mere suspicion and probable cause.' *State* v. *Johnson,* [supra, 565]; *State* v. *Delmonaco,* 194 Conn. 331, 341, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984)." *State* v. *DeFusco,* 27 Conn. App. 248, 253–54, 606 A.2d 1, cert. granted, 222 Conn. 910, 608 A.2d 693 (1992). Here, there was an independent investigation that corroborated much of the first time informant's tip. "Corroboration of an informant's tip by independent police information has long been considered critical in determining probable cause. *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967); *Draper* v. *United States,* 357 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959)." *State* v. *Hunter,* 27 Conn. App. 128, 134, 604 A.2d 832 (1992). The informant had described the defendant as using his car to deliver drugs for sale to various dealers, including Petrino and Goulet. The affidavits state that Bridgeport police had conducted surveillance of the defendant and observed him driving to Petrino's and Goulet's homes, stopping for short periods, and then leaving. This was consistent with the informant's description of the defendant's role as distributor of the

drugs in this operation. It was not unreasonable for the magistrate to infer from these facts that the informant had personal knowledge that the defendant was using his car to deliver drugs for sale to various locations.

The first time informant conducted two controlled buys of cocaine under the direction of the affiants at Petrino's and Goulet's homes, two of the same locations at which other informants had said that the defendant stored drugs. The circumstances surrounding these controlled buys matched the information previously supplied by the informant regarding the defendant's method of operation, suggesting the informant did, in fact, have personal knowledge of the numerous earlier drug sales he claimed the defendant had made. This bolstered the first time informant's reliability; see *State* v. *Rodriguez,* 27 Conn. App. 307, 320, 606 A.2d 22 (1992); and helped establish his "general truthfulness or credibility." *State* v. *Johnson,* supra, 568. Based on these facts, the inference drawn by the. magistrate that the informant had firsthand knowledge of the defendant's activities was not unreasonable.

The defendant argues that because the affidavits fail to provide specific dates and times of the numerous drug purchases referred to by the first time informant, they are based on "mere speculation." We do not agree that this informant's failure to provide exact dates of the drug purchases he had made from the defendant was fatal to the affiants' reliance on his information. The "business of dealing in illegal drugs often involves a course of conduct which continues over a long period of time . . . and is usually considered to be a regenerating activity. . . . Because the affidavit as a whole clearly depicts narcotics trafficking carried on continuously over a period of months, and narcotics trafficking typically occurs for extended periods of time, the temporal factors are not as critical to the determina-

tion of probable cause and do not require the magistrate wholly to exclude this tip from his consideration." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodriguez,* supra, 319. Although the first time informant's claim that the defendant had sold drugs "numerous times" was nonspecific, it indicated that the alleged drug sales were an ongoing activity. This information was then corroborated by the two controlled buys, and information given by other confidential informants to Bridgeport detectives, as well as information that the defendant was the subject of continuing investigations by both the Statewide Narcotics Task Force and the special services (narcotics) unit of the Stratford police department.

The defendant further argues that the warrant affidavits do not contain sufficient details to support a warrant to search his home. The defendant makes much of the fact that the controlled buys occurred not at his home, but at Petrino's and Goulet's. "In dealing with large scale drug conspiracies, it is reasonable to conclude that the participants will maintain certain records and supplies in their homes." *State* v. *Vallas,* 16 Conn. App. 245, 262, 547 A.2d 903 (1988), aff'd sub nom. *State* v. *Calash,* 212 Conn. 485, 563 A.2d 660 (1989). "Actual observations of illegal activity or contraband in the premises to be searched . . . are not required to establish probable cause." (Internal quotation marks omitted.) *State* v. *Diaz,* 27 Conn. App. 427, 432, 607 A.2d 439, cert. granted, 223 Conn. 903, 610 A.2d 177 (1992). Here, the first time informant did not indicate that the defendant sold drugs directly out of his home, but that he used his home to warehouse the drugs. He also indicated that he had seen the defendant pick up drugs from his home for delivery elsewhere. In view of the facts and circumstances, it was not unreasonable for the magistrate to find there was probable cause to search the defendant's home.

"Although the confidential informant was not specifically shown to be reliable or trustworthy, the information derived from all sources and corroborated by police surveillance [and investigation] reasonably allowed the issuing authority to conclude that the information supplied by the informants presented a substantial factual basis on which to find that probable cause existed." *State* v. *Marsala,* 27 Conn. App. 291, 296, 605 A.2d 866, cert. granted, 223 Conn. 902, 610 A.2d 177 (1992). The "totality of the circumstances" presented in the affidavits therefore supports the trial court's denial of the defendant's motion to suppress. *State* v. *Barton,* supra; see *Illinois* v. *Gates,* supra.

## II

The defendant next claims that the judgment of conviction must be reversed because the trial court improperly failed to define an essential element of the crime of conspiracy. The second count of the state's substitute information filed on March 19, 1991, charged the defendant with conspiracy to violate three separate sections of the state dependency producing drug law, General Statutes §§ 21a-277 (a) and 21a-279 (a) and (c). The defendant argues that the trial court failed to include in its instructions to the jury a requirement that it unanimously find that he had conspired to commit one or some or all of these underlying offenses. Specifically, the defendant argues that because the underlying offenses carry different maximum sentences, ranging from one to fifteen years for first time offenses, the jury should have been instructed that it was required to determine, as an essential element of the crime of conspiracy, the particular underlying offense or offenses that the defendant had conspired to commit. Without this determination, the defendant argues, the court could not know which crime or crimes the jury found the defendant guilty of conspiring to commit and thus could not properly sentence him.

The defendant concedes that he did not except to the trial court's instructions at the time they were given. He claims, however, that he is entitled to review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), because the faulty instructions violated his rights to due process and to a jury trial under both the United States and Connecticut constitutions.[5] In the alternative, the defendant claims that the erroneous jury instructions constituted "plain error." Practice Book §§ 4185, 2000; *State* v. *Hopes,* 26 Conn. App. 367, 373, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992).

In *State* v. *Golding,* supra, 239–40, our Supreme Court held that a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.)

We agree with the defendant that, though unpreserved, this claim satisfies the conditions warranting appellate review "because the jury reached its decision without *any* instruction on, or consideration of,

---

[5] The fourteenth amendment to the United States constitution provides in part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."

Article first, § 8, of the Connecticut constitution provides in part: "In all criminal prosecutions, the accused shall have a right to be . . . informed of the nature and cause of the accusation. . . . No person shall be . . . deprived of life, liberty or property without due process of law. . . ."

an essential element of the crime charged. *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945)." (Emphasis in original.) Id., 238. Jury instructions must provide jurors with a "clear understanding of the elements of the crime charged, and [afford] them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Avila,* 223 Conn. 595, 602, 613 A.2d 731 (1992). If an instruction fails to satisfy these requirements, it violates "the defendant's right to due process of the law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8 of the Connecticut constitution." Id., 603. An accused may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983). We conclude that, under the facts of this case, the jury was required to determine, beyond a reasonable doubt, which underlying crime or crimes the defendant had conspired to commit. The trial court's failure to instruct the jury in this regard deprived the defendant of a fair trial.

General Statutes § 53a-48 (a) provides that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

"Where the evidence establishes only one agreement, there can be only one conspiracy conviction, even though the conspirators planned, as part of the agreement, to engage in conduct violative of more than one criminal statute. *State* v. *Stellato,* 10 Conn. App. 447, 456–57, 523 A.2d 1345 (1987)." *State* v. *Reyes,* 19 Conn. App. 179, 185, 562 A.2d 27 (1989), cert. denied, 213 Conn. 812, 568 A.2d 796 (1990). " 'Whether the object

of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed.' *Braverman* v. *United States,* 317 U.S. 49, 53–54, 63 S. Ct. 99, 87 L. Ed. 23 (1942) . . . ." *State* v. *Howard,* 221 Conn. 447, 462, 604 A.2d 1294 (1992); *State* v. *Stellato,* supra, 456.

The penalty for conspiracy is defined in General Statutes § 53a-51, which provides that the crime of conspiracy is a crime "of the same grade and degree as the most serious offense which is . . . [the] object of the conspiracy." In *State* v. *Trent,* 182 Conn. 595, 601, 438 A.2d 796 (1981), a case involving the crime of attempt, for which the penalty is also defined in § 53a-51, our Supreme Court noted that this section, patterned on the Model Penal Code, "demonstrates that careful selectivity of language by the legislature that points unerringly to the conclusion that the sentence for [attempt or conspiracy] to commit a crime was to be prescribed in accordance with the sentencing parameters delineated for the substantive crime[s] which [were] the object[s] of the attempt [or conspiracy]." Prior to the adoption of this language in 1971, the penalty for conspiracy carried "a maximum sentence of fifteen years even though the underlying offense may have had a much less severe maximum sentence." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes § 53a-51 (1971), p. 19. The language of the statute now allows for a closer concurrence between the grade of crime that was the object of the conspiracy and the sanction for conspiracy itself.

When the state charges in a single count a conspiracy that contemplates the commission of more than one crime, and the jury finds the defendant guilty on that single count of conspiracy, the question becomes which of the several crimes determines the maximum sentence. Section 53a-51 indicates that the penalty is based on "the most serious" object offense. The jury must, therefore, specifically determine the crime or crimes that were the object offenses of the conspiracy, so that the trial court may properly base the defendant's sentence on the most serious of these object offenses.

The defendant properly analogizes this case to our Supreme Court's decision in *State* v. *Golding,* supra. There, the court held that because a person convicted of general assistance fraud is subject to the penalties for larceny under General Statutes §§ 53a-122 through 53a-125b, and those statutes grade the degree of the crime and consequent severity of the penalties according to the dollar value of the assistance wrongfully obtained as a result of the defendant's conduct, the trial court must instruct the jury that it must find, beyond a reasonable doubt, the amount the defendant obtained by fraud. "Because the amount the defendant obtained by fraud [was] an essential element of the crime under the applicable statutory scheme, the trial court [was] obligated to instruct the jury concerning it." *State* v. *Golding,* supra, 238.

In this case, the second count of the state's substitute information alleged the existence of only one agreement.[6] That agreement contemplated the com-

---

[6] The substitute information states in pertinent part: "SAID STATE'S ATTORNEY FURTHER ACCUSES the said ISTVAN TOTH aka STEVEN TOTH with the crime of CONSPIRACY and charges that between January 1, 1989 to July 1, 1989 at Fairfield, Bridgeport, Stratford and at other locations unknown, the said ISTVAN TOTH aka STEVEN TOTH with intent that conduct constituting the crime of Violation of the State Dependency Producing Drug Law, in violation of Section[s] 21a-277 (a),

mission of three separate crimes.[7] While the defendant was properly convicted of only one crime of conspiracy, the statutory scheme indicates that the degree of that offense and the severity of the permissible punishment are determined by the most severe of the offenses that are the objects of the conspiracy. These three offenses authorize separate sentences of imprisonment up to a maximum one year, five years, and fifteen years, respectively.[8] Without a specific instruction to the jury, however, the trial court could not know which of the object offenses the defendant was found guilty of conspiring to commit and, hence, what punishment should be imposed.

We have carefully reviewed the trial court's instruction on the conspiracy count and find no indication that the jury was asked specifically to determine which object offense or offenses the defendant had conspired to commit. In its instruction, the trial court properly characterized the three underlying crimes as alternative means of committing the substantive crime of con-

21a-279 (a) [and] (c), be performed, agreed with Joel Campofiore, Joseph Mandel, Robert Petrino, Leon Goulet, and others unknown, and there was committed one or more of the following overt acts in the performance of such conspiracy . . . ."

[7] In his brief, the defendant suggests that the state should have charged and the trial court instructed on multiple counts of conspiracy. He cites our decision in State v. Stellato, 10 Conn. App. 447, 456–57, 523 A.2d 1345 (1987), in which we stated that "if the evidence justifies charging the jury that the defendant may be guilty of conspiracy to commit more than one crime, the court should instruct on all of the separate counts which charge conspiracy. If the jury returns guilty verdicts on more than one count the court should render judgment and sentence on only one. . . . Pursuant to General Statutes § 53a-51, the court should render judgment and sentence on conspiracy to commit the greater offense. If the crimes of conspiracy of which the jury finds the defendant guilty are of equal severity, the court must use its discretion to render judgment and sentence on only one of them." (Citations omitted.) We need not address the defendant's suggestion because in this case, the state elected to bring the conspiracy charge in a single count.

[8] See footnote 1.

spiracy. "The second count merely alleges a violation of those statutes [§ 21a-277 (a) and § 21a-279 (a) and (c)] as evidence that [the defendant] engaged in a conspiracy. The offense is conspiracy. And that he participated in the commission of overt acts which are outlined in paragraphs (a) through (e) of the information." The trial court explained in great detail each element of § 21a-277 (a), possession of narcotics with intent to sell. Following that, the court again explained at length the elements of conspiracy, stating: "Therefore, in order to sustain a conviction of this accused on the [conspiracy] charges contained in this information, the first element which the state must prove beyond a reasonable doubt is that he entered into an agreement with at least one other person to engage in conduct constituting a crime. What crime? The possession of cocaine and heroin, as I have read that to you previously. And where? At the date and time specified in the information, that residence on Rhode Island Avenue, Fairfield, June 29, 1989, knowing the illegal character of the material possessed, actually or constructively. Did he make an agreement to do that? Secondly, they rely on subsection (c) where the reliance is on possession of marijuana in vehicles. . . . And primarily that he did possess, constructively or actually, cocaine and heroin with the intent to sell as a basis of the conspiratorial agreement between him and others." Shortly thereafter, the court stated: "The defendant may not be found guilty unless the state has proven beyond a reasonable doubt that he had the specific intent to violate the law, to possess cocaine and heroin with the intent to sell, and that he entered into the agreement to engage in conduct constituting that crime, or to possess heroin or cocaine simply or to possess marijuana, as the subject matter of [§ 21a-]279 (c)." Still later, when instructing the jury on the beyond a reasonable doubt standard, the trial court referred to

"the offense of conspiracy, agreeing with others to violate §§ 21a-277 (a) and [21a-]279 (a) and (c), as I have defined them for you."

It is evident from the instructions that the trial court never made clear to the jury that it was required to find that the defendant had conspired to commit one or two or all three of the crimes specified in the information. At one point, the jury was instructed on the object offenses in the disjunctive; at several other points, the jury was instructed in the conjunctive. The jury's return of a general verdict of guilty makes it impossible to know which of the several object crimes set forth in the information it determined the defendant had conspired to commit.

At sentencing, the trial court apparently relied on the fact that much of the evidence, particularly the videotaped discussion shown to the jury, would support a conviction based on a conspiracy to violate § 21a-279 (a), possession of cocaine and heroin with intent to sell. In the absence of a special instruction to the jury, however, the trial court could not properly determine whether the jury had intended to convict the defendant of conspiracy to possess heroin and cocaine with intent to sell, or conspiracy to possess heroin and cocaine, or conspiracy to possess marihuana, or conspiracy to commit all or a combination of these offenses. See *United States* v. *Orozco-Prada,* 732 F.2d 1076, 1083–84 (2d Cir. 1984); see also *United States* v. *McNeese,* 901 F.2d 585, 605 (7th Cir. 1990); *United States* v. *Barrett,* 870 F.2d 953, 956 (3d Cir. 1989) (Stapleton, J., concurring).

We point out that this is not a case where the defendant was convicted of the most serious underlying offense. In that case it might have been reasonable for the trial court to conclude that the jury had also found the defendant guilty of a conspiracy to commit that

underlying offense. See *United States* v. *Peters,* 617 F.2d 503, 506 (7th Cir. 1980) (per curiam). Here, the jury acquitted the defendant of the underlying offense of possession of cocaine and heroin with intent to sell. Therefore, the trial court could not, without a special instruction, reasonably conclude that the jury had found the defendant guilty of conspiracy to commit that offense.

"In reviewing a constitutionally based challenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction." (Internal quotation marks omitted.) *State* v. *Booker,* 28 Conn. App. 34, 46–47, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992). "[A]n error in the charge requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Foster,* 202 Conn. 520, 538, 522 A.2d 277 (1987). We conclude that in the absence of an instruction to the jury that it must determine beyond a reasonable doubt which of several object offenses the defendant conspired to commit, the jury was misled by the charge.

Because our resolution of this issue relating to the impropriety of the trial court's charge to the jury on the elements of conspiracy requires a new trial, we need not reach the defendant's third claim, that the trial court improperly instructed the jury on the overt act element of the crime.

Our resolution of this issue requires a reversal of the defendant's conspiracy conviction. Any retrial on that charge is subject to the limitations established by the Supreme Court in *State* v. *Aparo,* 223 Conn. 384, 614 A.2d 401 (1992).

The judgment is reversed in part and the case is remanded for a new trial on the second count of the information.

In this opinion the other judges concurred.

