******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* RICHARD BUSH
## (AC 34886)

DiPentima, C. J., and Sheldon and Mullins, Js.

*Syllabus*

Convicted of the crimes of sale of narcotics, sale of narcotics within 1500 feet of a school, conspiracy to sell narcotics and racketeering, the defendant appealed to this court, which reversed the trial court's judgment and remanded the case to the trial court with direction to render a judgment of acquittal on the charge of racketeering and for a new trial on all of the other charges of which the defendant was convicted. Thereafter, the state, on the granting of certification, appealed to the Supreme Court, which disagreed with this court's conclusion that the defendant was entitled to a new trial on the remaining charges and remanded the case to this court for consideration of his remaining claims on appeal. The defendant claimed, inter alia, that the trial court committed structural error when it failed to grant his initial request to represent himself and unlawfully sentenced him to twenty years incarceration on his conviction for conspiracy, which, he claimed, exceeded by five years the maximum possible term of incarceration for conspiracy to sell cocaine. On remand, *held*:

1. The trial court did not abuse its discretion when it failed to grant the defendant's initial request to represent himself and suggested to him that his trial counsel continue to represent him through voir dire; the defendant could not reasonably be found to have made a clear and unequivocal request to proceed without counsel, the defendant having agreed with the court's suggestion after the court canvassed him to determine whether he had the capacity to represent himself.

2. The defendant could not prevail on his claim that the jury was misled by the trial court's instructions on the conspiracy charge, which was based on his assertion that the court failed to instruct the jury on the elements of possession of narcotics and possession of narcotics with intent to sell, and to determine which of the underlying crimes charged against him that he conspired to commit: it was not likely that the jury was misled by the court's failure to mention or describe other offenses listed in the information as alleged objects of the conspiracy, as the guilty verdict was necessarily based on the only theory of liability on which the jury was instructed, which was conspiracy to sell cocaine, and, although the information listed four offenses as alleged objects of the conspiracy, there was no reasonable possibility that the jury was confused or misled by the court's failure to mention in its instructions the charges of possession of narcotics or possession of narcotics with intent to sell as other alleged objects of the conspiracy, the court having limited the scope of the charged conspiracy to the sale of narcotics.

3. The trial court improperly sentenced the defendant to twenty years incarceration on the conspiracy conviction, as the most serious crime of which he was convicted that was proved to have been an object of the conspiracy was the sale of cocaine by a drug-dependent person, which carried a maximum possible prison sentence of fifteen years for a first offense, and, contrary to the state's claim that the twenty year sentence was lawful because the defendant testified that he had a prior conviction for sale of cocaine, which exposed him, as a repeat offender, to a maximum possible prison sentence of thirty years, there never was a trial or other proceeding or a factual finding as to his alleged status as a repeat offender, as the state initially informed the court, defense counsel and the defendant that it would not prosecute a part B information with respect to the conspiracy charge and thereafter withdrew the part B information after the jury returned its verdict; accordingly, the sentence on the conspiracy conviction was vacated and the case was remanded for resentencing.

Argued September 18, 2017—officially released January 9, 2018

*Procedural History*

Substitute information charging the defendant with six counts each of the crimes of sale of narcotics by a person who is not drug-dependent and sale of narcotics within 1500 feet of a school by a person who is not drug-dependent, and with one count each of the crimes of conspiracy to sell narcotics and racketeering, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Thim, J.*; verdict and judgment of guilty of six counts each of the lesser included offenses of sale of narcotics within 1500 feet of a school by a person who is drug-dependent and sale of narcotics by a person who is drug-dependent, and one count each of conspiracy to sell narcotics and racketeering, from which the defendant appealed to this court, which reversed the trial court's judgment and remanded the case with direction to render judgment of not guilty on the racketeering charge and for a new trial on the other charges; thereafter, the state, on the granting of certification, appealed to the Supreme Court, which reversed this court's judgment in part and remanded the case to this court for further proceedings. *Reversed in part; further proceedings.*

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Adam E. Mattei*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *C. Robert Satti*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. This case is before us on remand from our Supreme Court following its affirmance of our determination that insufficient evidence was presented at trial to sustain the conviction of the defendant, Richard Bush, for racketeering in violation of General Statutes § 53-393 et seq. The Supreme Court disagreed, however, with this court's determination that the defendant was entitled to a new trial on the other charges of which he had been found guilty—six counts each of sale of narcotics and sale of narcotics within 1500 feet of a school, and one count of conspiracy to sell narcotics— because the trial court's denial of his motion for a continuance to review voluminous discovery documents after granting his second request to represent himself had effectively deprived him of his constitutional right to self-representation. Before us now are the defendant's additional claims of error as to his remaining convictions. The defendant claims that the trial court: (1) violated his constitutional right to self-representation by not granting his initial request to represent himself on the second day of voir dire; (2) improperly instructed the jury on the charge of conspiracy; and (3) improperly sentenced him to a term of twenty years incarceration on his conviction for conspiracy. We reject the defendant's first two claims of error, and thus conclude that he is not entitled to a new trial. We agree with the defendant, however, that he was improperly sentenced to a term of twenty years incarceration on his conviction for conspiracy. Accordingly, we remand this case for resentencing on that conviction.

The Supreme Court recounted the following relevant factual and procedural background, as previously set forth by this court. "The charges upon which the defendant was brought to trial were based upon his alleged involvement in seven separate sales of cocaine to a police informant, David Hannon, during an undercover police investigation of illegal drug activity in the area of Pembroke and Ogden Streets in Bridgeport between late June [and] early November, 2010. . . . [D]uring that time period, the investigating task force of officers from the Bridgeport Police Department and the Connecticut State Police obtained extensive audiotape and videotape surveillance footage of these sales, in which the defendant, working from the porch of his duplex home, which directly abutted the sidewalk on Pembroke Street, sold cocaine to Hannon, or facilitated sales to Hannon by six other drug dealers, namely, David Moreland, Jason Ortiz, Willie Brazil, Raymond Mathis, Carlos Lopez, and Kenneth Jamison.

"In an amended long form information dated January 3, 2012, the state charged the defendant, more particularly, with: one count each of sale of narcotics by a person who is not drug-dependent and sale of narcotics within 1500 feet of a school by a person who is not

drug-dependent in connection with six of the seven alleged sales; and one count each of conspiracy to sell narcotics and racketeering based upon his alleged involvement in all seven such alleged sales, as specially pleaded both in the conspiracy count, as overt acts in furtherance of the alleged conspiracy, and in the racketeering count, as incidents of racketeering activity claimed to prove his involvement in a pattern of racketeering activity, as required by [General Statutes] § 53-396 (a). The jury found the defendant guilty of the lesser included offenses of sale of narcotics by a person who is drug-dependent and sale of narcotics within 1500 feet of a school by a person who is drug-dependent based upon his proven involvement in sales of cocaine to Hannon on the six dates he was charged in the information with committing such offenses, particularly June 30, July 14, July 16, August 6, August 24, and November 9, 2010. The jury also found the defendant guilty of both conspiracy to sell narcotics and racketeering, specifying as to the latter charge, in a special verdict returned pursuant to § 53-396 (b), that the sole basis for its finding that the defendant had engaged in a pattern of racketeering activity as a member of an enterprise was his involvement in the sale of cocaine on two of the seven dates specified in the information, June 30 and November 9, 2010, which it found to have constituted incidents of racketeering activity. The trial court later sentenced the defendant on all charges of which he was convicted to a total effective sentence of twenty years incarceration." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Bush*, 325 Conn. 272, 277–78, 157 A.3d 586 (2017). Specifically, the defendant was sentenced to: twenty years incarceration on his conviction for conspiracy in violation of General Statutes §§ 53a-48 and 21a-278 (b); fifteen years incarceration on each of his six convictions for sale of narcotics by a drug-dependent person in violation of General Statutes § 21a-277 (a), to run concurrently with his sentence for conspiracy; and three years incarceration on each of his six convictions for sale of narcotics by a drug-dependent person within 1500 feet of a school in violation of General Statutes § 21a-278a (b), to run concurrently with one another and with his sentence for conspiracy, but consecutively to his concurrent sentences for sale of narcotics.

The defendant appealed from his conviction to this court. This court, as previously noted, reversed his racketeering conviction and directed that a judgment of acquittal be entered on that charge. This court further determined that he was entitled to a new trial on the other charges of which he had been convicted because he had effectively been denied his right to represent himself when the trial court, after granting his request to represent himself, denied his motion for a continuance to review voluminous discovery documents before the start of trial. *State* v. *Bush*, 156 Conn. App. 256, 112

A.3d 834 (2015), rev'd, 325 Conn. 272, 157 A.3d 586 (2017). Our Supreme Court affirmed the reversal of the defendant's racketeering conviction, but disagreed with this court's conclusion that the defendant was entitled to a new trial on the remaining charges because the trial court violated his constitutional right to self-representation when it denied his request for a continuance to examine the state's disclosure on the eve of trial. We now address his remaining claims on appeal. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court violated his constitutional right to represent himself at trial by denying his initial request to do so. Although the court ultimately granted the defendant's second request to represent himself, and the defendant subsequently withdrew that request and elected to proceed with his attorney's representation after his motion for a continuance was denied, he claims that the court committed structural error by denying his initial request to represent himself. We disagree.

The following additional procedural history is relevant to this claim. "On the first day of voir dire, March 12, 2012, the defendant told the court that he and [his court-appointed counsel, Vicki Hutchinson] 'don't connect at all,' and that he was 'very uncomfortable' with her. In response, the court told the defendant: 'Sir, this case is over a year old . . . approximately a year old, you were arrested about a year ago, around July. You were brought to this courthouse in July of [2011], you plead[ed] not guilty, and . . . Hutchinson has represented you since then. This is . . . and we're ready to start picking the jury, and this is the first request, [a] request to have someone other than . . . Hutchinson represent yourself. . . . Hutchinson is an extremely well experienced defense attorney, we're going forward with the trial at this time.'

"The next day, March 13, 2012, the defendant again voiced his dissatisfaction with Hutchinson's representation. The defendant also complained that he had not had the opportunity to review with his attorney various documents and videotapes she had procured through discovery. In response, the court reiterated that the defendant's trial had already begun and that Hutchinson was a very experienced attorney. The court explained that the trial would proceed with jury selection that morning, but that the defendant would be given the afternoon to meet with Hutchinson. At that point, the state suggested that the court may have an obligation, pursuant to *State* v. *Flanagan*, 293 Conn. 406, 978 A.2d 64 (2009), to canvass the defendant as to his request to represent himself. The court responded, '[w]e're not at that point yet.' Voir dire resumed.

"Shortly thereafter, when the defendant interrupted

the voir dire proceedings, the court asked him if he wanted to represent himself. When the defendant responded in the affirmative, the court canvassed him both to determine if he had the desire and the capacity to represent himself, and to warn him of the dangers and disadvantages of self-representation. After asking the defendant several questions on these subjects, the court proposed to the defendant that he agree to have Hutchinson pick the jury, and then it would revisit the issue of whether he should be allowed to represent himself going forward. The defendant initially agreed to that proposal. Voir dire thus continued until 1:15 p.m., with Hutchinson still representing the defendant. Thereafter, as promised, the defendant was afforded the rest of the day to meet with Hutchinson to review the state's disclosure.

"The next day, March 14, 2012, the defendant notified the court that technical difficulties prevented him from being able to watch certain of the videotapes that he had sought to watch on the previous afternoon. Following an exchange with the defendant and a discussion with counsel, the court decided not to proceed with voir dire that day so as to give the defendant another opportunity to view the videotapes that he had not been able to view the day before.

"After the defendant reviewed the videotapes, the court revisited the defendant's request to represent himself, and the defendant reiterated his desire to do so. The court then thoroughly canvassed the defendant and determined that he validly waived his right to counsel. The court asked Hutchinson to remain present as standby counsel for the defendant, and then adjourned for the day." *State* v. *Bush*, supra, 325 Conn. 306–308.

On the next day, March 15, 2012, the court denied the defendant's request for a continuance to review approximately 900 pages of documents that the state had provided to Hutchinson. After the court denied his request for a continuance, the defendant elected to proceed with Hutchinson as his attorney.

The defendant now claims that the court committed structural error when it failed to grant his initial request to represent himself on the second day of voir dire. We disagree.

"The sixth amendment to the United States constitution provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense. The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . . In *Faretta* v. *California*, [422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)], the United States Supreme Court concluded that the sixth amendment [also] embodies a right to self-representation and that a defendant in a state crimi-

nal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. . . . In short, forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so. . . .

"It is well established that [t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . .

"The inquiry mandated by Practice Book § 44-3 is designed to ensure the knowing and intelligent waiver of counsel that constitutionally is required. . . . We ordinarily review for abuse of discretion a trial court's determination, made after a canvass pursuant to . . . § 44-3, that a defendant has knowingly and voluntarily waived his right to counsel. . . . [W]here the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself . . . whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which . . . our review is plenary. . . .

"State and federal courts consistently have discussed the right to self-representation in terms of invoking or asserting it . . . and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. . . . The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed pro se is one of many safeguards of the fundamental right to counsel. . . . Accordingly, [t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . Conversely, once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3], on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel. . . .

"Although a clear and unequivocal request is required, there is no standard form it must take. [A]

defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to [that] request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . Moreover, it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must result in a clear and unequivocal statement. . . .

"Finally, in conducting our review, we are cognizant that the context of [a] reference to self-representation is important in determining whether the reference itself was a clear invocation of the right to self-representation. . . . The inquiry is fact intensive and should be based on the totality of the circumstances surrounding the request . . . which may include, inter alia, whether the request was for hybrid representation . . . or merely for the appointment of standby or advisory counsel . . . the trial court's response to a request . . . whether a defendant has consistently vacillated in his request . . . and whether a request is the result of an emotional outburst . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pires*, 310 Conn. 222, 230–32, 77 A.3d 87 (2013).

As explained herein, on the second day of voir dire, following a colloquy with the defendant, the court canvassed him to determine whether he had the capacity to represent himself. Upon hearing the defendant's responses to its inquiries, the court stated that it would not be "a wise decision" for him to represent himself and suggested that Hutchinson continue to represent him through voir dire, after which his request to represent himself would be revisited. The defendant agreed to the court's suggestion, stating, "[o]kay, we could do that. That's no problem . . . I mean fair is fair." In these circumstances, the defendant cannot reasonably be found to have made a clear and unequivocal request to proceed without counsel at that time. Moreover, in light of the defendant's agreement with the trial court's suggestion that he proceed with the assistance of counsel during voir dire, we cannot conclude that the court abused its discretion in proceeding with voir dire with Hutchinson representing the defendant.

II

The defendant next claims that the court erred in two ways in instructing the jury on the charge of conspiracy against him. First, he claims that the court erred by failing to instruct the jury on the elements of possession of narcotics in violation of General Statutes § 21a-279 and possession of narcotics with intent to sell in violation of § 21a-277 (b), two of the four offenses that were

listed in the information as alleged objects of the charged conspiracy. Second, he claimed that the court erred in failing to instruct the jury to specify in its verdict, if it found him guilty of conspiracy, which of those listed offenses had been proved beyond a reasonable doubt to be the intended object or objects of the conspiracy. The defendant claims that these alleged infirmities in the court's instructions likely misled the jury. We are not persuaded.

"[I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result. . . . We will reverse a conviction only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Frasier*, 169 Conn. App. 500, 509–10, 150 A.3d 1176 (2016), cert. denied, 324 Conn. 912, 153 A.3d 653 (2017).

On the conspiracy charge, the court instructed the jury that "the state must prove three elements beyond a reasonable doubt. First: there was an agreement between the defendant and one or more persons to engage in the sale of—of cocaine. Second: there was an overt act in furtherance of the subject of the agreement by one of those persons who are part of the agreement. Third: the defendant specifically intended to commit the crime; that is, to sell cocaine.

"As to the first element, an agreement between the defendant and one or more persons that criminal conduct be performed, the state must prove that [the defendant] came to an understanding with at least one other person to further the criminal purpose of selling of cocaine. The state . . . need not prove a formal or express agreement. The state may rely on circumstantial evidence if such evidence is sufficient to prove beyond a reasonable doubt the existence of an agreement.

"The second essential element is that after the agreement was formed, one or more of the conspirators carried out an overt act in furtherance of the conspiracy. An overt act is any step, action or conduct taken to achieve the objective of the conspiracy. It makes no difference which member of the conspiracy commits the act; it need not be the defendant. The state must prove beyond a reasonable doubt at least one member of the conspiracy carried out the overt act.

"The third essential element is that when the defen-

dant entered into the conspiratorial agreement, he intended to violate the drug laws. The state must prove beyond a reasonable doubt that [the defendant] had the intent, the conscious objective to violate the criminal laws, and the sale of cocaine. The state claims that the conspirators agreed and the defendant had the intent to sell . . . cocaine.

"I have previously discussed the essential elements of the sale of cocaine laws. Essentially, the state must prove [that the defendant] intended to sell or deliver cocaine to persons who are not members of the conspiracy.

"To summarize this charge, the state must prove beyond a reasonable doubt that [the defendant] intended to sell cocaine, and acting with that intent he agreed with one or more persons to pursue conduct that involve[d] the sale of cocaine. The state must further prove that at least one of the conspirators did an overt act in furtherance of the conspiracy. If you find beyond a reasonable doubt all these elements are proven, you shall find [the defendant] guilty of conspiracy. If you find the state has failed to prove any element beyond a reasonable doubt, you should find him not guilty of the conspiracy charge."

In so instructing the jury, the court narrowed the description of the charged conspiracy, and thus the legal basis upon which the defendant could lawfully be found guilty of that offense as charged, of conspiracy to sell cocaine. It thereby effectively eliminated, as possible objects of the charged conspiracy, both possession of cocaine in violation of § 21a-279 and possession of cocaine with intent to sell in violation of § 21a-277 (b). Because the jury's guilty verdict, and thus the defendant's conspiracy conviction, were necessarily based on the only theory of liability on which the jury was instructed—that of conspiracy to sell cocaine—it is not likely that the jury was misled by the court's failure to mention or describe other offenses listed in the information as alleged objects of the conspiracy in its final instructions.

The defendant also argues that the trial court improperly failed to charge the jury that it must determine which underlying crime or crimes he conspired to commit. In support of this argument, the defendant cites to *State* v. *Toth*, 29 Conn. App. 843, 618 A.2d 536, cert. denied, 225 Conn. 908, 621 A.2d 291 (1993), in which the defendant allegedly conspired to commit three separate crimes. There, because the trial court allegedly failed to instruct the jury that it must find which specific crime or crimes the defendant and his coconspirators had conspired to commit, the trial court could not know from the jury's verdict which offense or offenses the defendant had been convicted of conspiring to commit. The court in *Toth* thus held that, "in the absence of an instruction to the jury that it must determine beyond

a reasonable doubt which of several object offenses the defendant conspired to commit, the jury was misled by the charge." Id., 864.

The reasoning in *Toth* is plainly inapposite to this case, however, for here, although four offenses were listed in the information as alleged objects of the charged conspiracy, the court instructed the jury that it could find the defendant guilty of conspiracy only on the theory of conspiracy to sell cocaine. Because the court thereby limited the scope of the charged conspiracy to the sale of narcotics, there was no reasonable possibility that the jury was confused or misled by the court's failure to mention possession of narcotics or possession of narcotics with intent to sell as other alleged objects of the charged conspiracy.

### III

The defendant's final claim of error is that the trial court unlawfully sentenced him to twenty years incarceration on his conviction for conspiracy. The defendant claims that the challenged sentence exceeds by five years the maximum possible term of incarceration for conspiracy to sell cocaine, as that crime was charged and proved against him in this case. He thus asks that his sentence for conspiracy be vacated and that this case be remanded to the trial court for resentencing on that charge in accordance with law.

Our Penal Code has long provided, in § 53a-48 (a), that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." Under that statute, the three essential elements of conspiracy, are (1) that the defendant agreed with one or more persons to engage in or cause the performance of conduct constituting one or more crimes, which are referred to as the "objects" of the conspiracy; (2) that any one of the coconspirators committed an overt act in pursuance of such conspiracy; and (3) that the defendant specifically intended, at the time of the conspiratorial agreement, to commit or cause the performance of conduct constituting one or more crimes that were the objects of the conspiracy.

The crime of conspiracy, so defined, does not carry a specific maximum punishment that is the same in all cases. Instead, the maximum punishment imposable for conspiracy is made to depend upon the seriousness of the crime or crimes that is/are proved to have been the object(s) of the conspiracy. On this score, our Penal Code further provides, in General Statutes § 53a-51, that "conspiracy . . . [is a crime] of the same grade and degree as the most serious offense which is . . . an object of the conspiracy, except that [a] conspiracy to commit a class A felony is a class B felony."

To implement this relational rule of sentencing for conspiracy, it is well settled that the state must prove not only which particular crimes were the agreed and intended objects of the charged conspiracy, but also that the defendant, when entering into the conspiratorial agreement, specifically intended to commit or cause the performance of conduct constituting such object crimes, and that the overt act upon which the state relies to obtain a conviction was committed in pursuance of an agreement to commit such object crimes. Without such specificity in the jury's guilty verdict, the court cannot determine, without impermissible speculation, what particular type of conspiratorial agreement underlies that verdict, or thus what maximum sentence can lawfully be imposed on the defendant on the basis of that verdict.

In this case, the defendant was brought to trial on an information charging him, in the second count, with conspiracy to violate several listed provisions of the State Dependency Producing Drug Law, particularly §§ 21a-278 (b), 21a-277 (a), 21a-277 (b) and 21a-279, while acting with the intent to violate those statutes. The second count further alleged that, "in the performance of such conspiracy," the defendant and/or one or more other named coconspirators committed at least one of seven overt acts, each a sale of cocaine on a particular date and at a particular location in the city of Bridgeport. The six alleged overt acts in which the defendant was alleged to have participated conformed precisely, as to date, location, and persons participating, to the six alleged sales of cocaine on which the state based separate substantive charges of one count each of sale of cocaine by a person who is not drug-dependent in violation of § 21a-278 (b) and sale of cocaine by a person who is not drug-dependent within 1500 feet of a school, in violation of § 21a-278a (b), in the third through the fourteenth counts of the information.

The defendant defended himself at trial on his substantive charges of sale of cocaine by a person who is not drug-dependent and sale of cocaine by a person who is not drug-dependent within 1500 feet of a school, inter alia, by claiming and attempting to prove, in the manner of an affirmative defense, that he was drug-dependent throughout the period in which he was alleged to have made the sales of cocaine here at issue. On the basis of that defense, which the defendant supported at trial by his own testimony and that of others who knew him as to his long-standing drug addiction, the trial court instructed the jury as to each alleged sale of cocaine both on the charged offenses of sale of cocaine by a person who is not drug-dependent and sale of cocaine by a person who is not drug-dependent within 1500 feet of a school and on the lesser included offenses of sale of cocaine by a drug-dependent person and sale of cocaine by a drug-dependent person within

1500 feet of a school. So instructed, the jury found the defendant not guilty on each charge of sale of cocaine by a person who is not drug-dependent and sale of cocaine by a person who is not drug-dependent within 1500 feet of a school, but found him guilty on each charge of sale of cocaine by a drug-dependent person and sale of cocaine by a drug-dependent person within 1500 feet of a school.

In light of the defendant's acquittal on all charges of sale of cocaine by a person who is not drug-dependent under § 21a-278 (b), pursuant to his affirmative defense of drug dependency, the defendant claims that the most serious crime which was proved at trial to have been an object of the charged conspiracy was sale of cocaine by a drug-dependent person in violation of § 21a-277 (a), which carries with it, for a first offense, a maximum possible prison sentence of fifteen years. He argues, on that basis, that his twenty year prison sentence for conspiracy must be vacated because it exceeds the statutory maximum prescribed by law.

The state does not dispute the defendant's claim that, in light of the jury's finding on the issue of drug dependency, the most serious crime he was found to have conspired to commit was sale of cocaine by a drug-dependent person in violation of § 21a-277 (a). It argued in its brief, however, that that sentence was entirely lawful because the defendant has a prior conviction for sale of cocaine, as he admitted in his testimony at trial, and thus was exposed, as a repeat offender, to a maximum possible prison sentence of thirty years, both on each of his substantive charges of sale of cocaine by a drug-dependent person and on the charge of conspiracy to sell cocaine in violation of §§ 53a-48 and 21a-277 (a).

On this record, however, there are two important reasons why the state's argument must be rejected. First, although the state specially pleaded in a part B information that the defendant was subject to enhanced penalties on each of his charges of sale of cocaine because he was a repeat offender, the state's trial prosecutor expressly informed the trial court, defense counsel and the defendant, at an in-court proceeding designed to warn the defendant about the dangers and disadvantages of representing himself at trial, that the state had not filed and would not prosecute the part B information with respect to the charge of conspiracy. For that reason, the trial court acknowledged on the record that the defendant's maximum possible prison sentence on the still-pending charge of conspiracy to sell cocaine by a person who is not drug-dependent in violation of §§ 53a-48 and 21a-278 (b) was twenty years, as prescribed by the latter statute for a first offense. Therefore, upon the defendant's acquittal on each charge of sale of cocaine by a person who is not drug-dependent, and his resulting conviction of the lesser included offense of sale of cocaine by a drug-dependent

person, the most serious prison sentence the defendant could have received on the charge of conspiracy to sell cocaine at the time of such cocaine sales was a term of fifteen years.

The second reason why the state is incorrect in its argument that the defendant's maximum possible sentence on each charge of sale of cocaine by a drug-dependent person was thirty years is that the state withdrew the part B information in this case shortly after the jury returned its guilty verdict. As a result, there never was a trial or other fact-finding proceeding, before the jury or the trial court, as to the defendant's alleged status as a repeat offender, and thus there was no factual finding that he had that status despite his testimony on the record on that subject. For the foregoing reasons, the defendant's maximum possible prison sentence on the charge of conspiracy to sell cocaine as a drug-dependent person in violation of §§ 53a-48 and 21a-277 (a) is a term of fifteen years.

The judgment is reversed only as to the sentence on the conspiracy conviction and the case is remanded for resentencing in accordance with law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.