STATE OF CONNECTICUT *v.* DAVID JOHNSON
STATE OF CONNECTICUT *v.* DIANE MCINTOSH
(14095)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

---

Argued May 1—decision released July 16, 1991

*Timothy J. Sugrue,* assistant state's attorney, with whom were *Steven M. Sellers,* assistant state's attorney, and, on the brief, *John J. Kelly,* chief state's attorney, *John M. Connelly,* state's attorney, *Marcia Smith,* senior assistant state's attorney, and *Susan C. Marks,* assistant state's attorney, for the appellant-appellee (state).

*Louis S. Avitabile,* special public defender, with whom were *Denise Dishongh* and *Joshua R. Kricker,* for the appellees-appellants (defendants).

PETERS, C. J. The principal issue in this appeal is whether a search warrant issued on the basis of an affidavit alleging a single drug sale in the defendants' apartment was stale when it was obtained five days after the alleged sale and executed the day after it was obtained. The defendants, David Johnson and Diane McIntosh, were each convicted, after a jury trial, of the crimes of possession of heroin in violation of General Statutes § 21a-279 (a), and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).[1] Each appealed to the Appellate Court,

[1] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent

where the appeals were consolidated. The Appellate Court set aside the convictions and remanded the cases to the trial court with direction to grant the defendants' motions to suppress the evidence seized on the ground that the information on which the search warrant application was based was stale when the warrant was issued. *State* v. *Johnson*, 22 Conn. App. 40, 52, 576 A.2d 171 (1990). We granted the state's petition for certification to consider the question of the warrant's timeliness, and we granted the defendants' cross petition for certification to consider whether the warrant, if not stale, was adequate to establish probable cause.[2] We reverse.

The warrant application affidavit, dated April 7, 1987, set forth the following relevant facts. On April 2, 1987, Waterbury police received information from a known confidential informant that cocaine and heroin

---

offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

General Statutes § 21a-267 (a) provides: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance as defined in subdivision (9) of section 21a-240. Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor."

[2] We granted the state certification to appeal two issues: "(1) Should this court's holding in *State* v. *Kimbro*, 197 Conn. 219, [496 A.2d 498 (1985),] be reconsidered? (2) Did the Appellate Court correctly conclude that the probable cause established by the search warrant affidavit for April 2, 1987, was stale by April 7, 1987?" *State* v. *Johnson*, 216 Conn. 809, 580 A.2d 62 (1990). Because we have considered and decided the first issue certified here in another case; *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991), we do not address it in our consideration of this appeal.

We also granted the defendants' cross petition for certification, limited to the following issue: "Did the Appellate Court correctly conclude that the search warrant affidavit established probable cause on April 2, 1987?" *State* v. *Johnson*, supra.

were being sold from a particular apartment. On the basis of this information, the police arranged a controlled buy on the same date. They searched the informant, gave him thirty dollars, and observed him enter the defendants' apartment building. The informant was inside the building for approximately five minutes, during which period the police officers observed him standing at a window in the defendants' apartment. When the informant came out of the building, he gave the officers a paper packet containing a white powder that subsequently tested positive for cocaine. The informant told the officers that he had bought the packet from David Johnson, who had instructed him to "wait a few minutes while he made up the packet."

Based on this affidavit, the police, on April 7, 1987, sought and obtained a warrant to search the defendants' apartment, and they executed the warrant early in the morning of April 8, 1987. During the search the police found packets of drugs and drug paraphernalia. The defendants moved to suppress the evidence seized as a result of the search. Although the trial court suppressed certain seized items because they were beyond the scope of the warrant, it found that the warrant established probable cause under the *Aguilar-Spinelli* test mandated by this court in *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), and that the information relied upon to establish probable cause was not stale because it indicated ongoing criminal activity. *State* v. *Johnson,* supra, 41–42; see also *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

After a jury trial in which the defendants were convicted of the crimes of possession of heroin and of possession of drug paraphernalia, the defendants appealed, raising seven claims of error. The Appellate Court, addressing only two of the claims, determined that the

affidavit established probable cause on April 2, but held that the information was stale by April 7, when the officers sought the warrant. *State* v. *Johnson*, supra, 47–48. It therefore reversed the judgments of conviction and remanded the case to the trial court with direction to grant the defendants' motions to suppress. Id., 52.

In the present appeal, the state argues that the warrant was not stale because the facts alleged in it established the probability of ongoing criminal activity. The defendants argue, on their cross appeal, that the trial court should not have found probable cause based on the informant's inadequate tip. We conclude that the facts stated in the warrant affidavit were sufficient to establish probable cause, and that the information that established probable cause on April 2 was not yet stale when the warrant was issued on April 7. We therefore reverse.

I

In *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991), we held that the determination of probable cause under article first, § 7, of our state constitution[3] is to be made pursuant to the "totality of the circumstances" analysis announced by the United States Supreme Court, as the standard for determinations of probable cause under the fourth amendment to the federal constitution,[4] in *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct.

---

[3] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Under that analysis, the task of a magistrate in determining the existence of probable cause to search is to make a practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State* v. *Barton,* supra, 552. When an affidavit indicates that the police have relied on information from a confidential informant, "the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented." Id., 544.

The state concedes that the affidavit in this case does not expressly state either the basis of the informant's knowledge regarding the original tip or the basis on which the police concluded that the informant's information was trustworthy. It relies, rather, on the subsequent investigation and controlled buy to establish probable cause to search the defendants' apartment. The state acknowledges that the controlled buy was not perfect. The police observed the informant entering and leaving the building, and observed him briefly at a window in the defendants' apartment, but they did

not observe him while he was inside the apartment building before he entered or after he left the defendants' apartment. They searched him only after he left the multiple unit building, not immediately after he left the defendants' apartment. The defendants contend, in their cross appeal, that because the informant could have purchased the substance from someone other than the defendants during the time that he was in the building but out of view of the officers, the controlled buy was too unreliable to establish probable cause for the search. We disagree.

Imperfections in a controlled buy are not necessarily fatal to the determination of probable cause. See, e.g., *Hignut* v. *State,* 17 Md. App. 399, 303 A.2d 173 (1973) (similar buy found to establish at least a minimal basis for probable cause); *People* v. *Ferguson,* 94 Mich. App. 137, 288 N.W.2d 587 (1979) (affidavit describing buy in similar terms found to establish probable cause). Although in this case the police surveillance of the buy was incomplete, the affidavit reported that the informant had told the police that he had bought the packet from David Johnson in apartment 28. The police could reasonably have credited this hearsay information because the informant was not anonymous, but known, and therefore risked both loss of credibility with the police and possible prosecution for falsely reporting an incident under General Statutes § 53a-180 had his information proved to be fabricated. See *State* v. *Barton,* supra, 550–51. The police took further investigative steps as well. They tested the substance in the packet and determined that it was cocaine. They also ascertained from the Waterbury housing authority that the apartment specified by the informant was rented to Diane McIntosh. The police officers seeking the warrant attested in the affidavit to their personal knowledge that Johnson and McIntosh had lived together for several years. In light of this corroborative informa-

tion, the magistrate considering the affidavit was entitled to use the original inadequate tip by the informant to augment the incriminating information gathered by the police investigation. Even though the suspicions engendered by the initial tip would not have independently justified the issuance of a warrant, the magistrate was not required to disregard the tip altogether, but could consider whether the tip and the investigation together "bridged the gap" between mere suspicion and probable cause. *State* v. *Delmonaco,* 194 Conn. 331, 341, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984).

As the state concedes, the flaws in the original tip and in the controlled buy render this a marginal case for finding probable cause. In a doubtful or marginal case, however, our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination. *State* v. *Barton,* supra, 552; *State* v. *Morrill,* 205 Conn. 560, 565, 534 A.2d 1165 (1987); see also *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965). The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. *State* v. *Barton,* supra, 552. We conclude, as did both the trial court and the Appellate Court, that this warrant, although flawed, was not fatally defective in its allegations of probable cause. The facts stated in the affidavit provided a substantial basis for the magistrate's conclusion that there was a fair probability that illegal drugs and drug paraphernalia would be found in the apartment to be searched, at least on April 2, 1987, when the controlled buy took place. We turn, then, to the state's claim that, contrary to the decision of the Appellate Court, the information that would have justified a finding of probable cause on

April 2 had not become stale by April 7, when the magistrate actually issued the warrant.

## II

The state contends that probable cause to search the defendants' apartment continued to exist for at least five days after the controlled buy because the facts stated in the affidavit indicated that the defendants were engaged in the continuing activity of illegal drug sales. The defendants contend, to the contrary, that a single controlled buy, without other information as to the nature or extent of the alleged seller's operations, is insufficient to establish that drugs are likely to be present more than one or two days after the controlled buy. In the circumstances of this case, we agree with the state that the affidavit provided a substantial factual basis for the magistrate's conclusion that probable cause continued to exist on April 7.

The determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. *State* v. *Rose,* 168 Conn. 623, 631, 362 A.2d 813 (1975). Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cock-

tail party may well be stale the day after the cleaning [service] has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed." *Andresen* v. *State,* 24 Md. App. 128, 172, 331 A.2d 78 (1975), aff'd, 427 U.S. 463, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976); see also *Sgro* v. *United States,* 287 U.S. 206, 211, 53 S. Ct. 138, 77 L. Ed. 260 (1932); 2 W. LaFave, Search and Seizure (2d Ed. 1987) § 3.7 (a), pp. 74–88.

The Appellate Court has noted that the business of dealing in illegal drugs often "involves a course of conduct which continues over a long period of time"; *State* v. *Ralston,* 7 Conn. App. 660, 682, 510 A.2d 1346 (1986); and "is usually considered to be a regenerating activity." *State* v. *Brown,* 14 Conn. App. 605, 615, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); see also *State* v. *Vallas,* 16 Conn. App. 245, 262, 547 A.2d 903 (1988), aff'd, 212 Conn. 485, 563 A.2d 660 (1989); *Davidson* v. *State,* 54 Md. App. 323, 331, 458 A.2d 875 (1983). In this case, the affidavit provided a factual basis from which the magistrate could have inferred that the activity under investigation here was "the business of dealing in illegal drugs." First, it stated that the informant had initially told the police that drugs were "being sold" from the defendants' apartment. Although this tip alone would not have supported a finding of probable cause, it did indicate that the alleged drug sales were an ongoing activity. The police then corroborated the tip by arranging a controlled buy, which established that at least some quantity of an illegal drug was present when the informant sought to buy it.

When the informant subsequently described the buy at police headquarters, moreover, he said that Johnson had told him to wait a few minutes while he "made up the packet." From this statement the police and the

reviewing magistrate could reasonably have inferred that the defendant possessed a larger supply of the substance he was selling, from which he "made up" individual packets for resale. Although the statement was hearsay, the magistrate could have credited it for two reasons. First, the magistrate could have concluded that the informant's general truthfulness or credibility was adequately established when the controlled buy itself provided corroboration of his initial tip. Second, the magistrate could have concluded that the statement that the informant attributed to Johnson is one that is too innocuous to have been invented.

A final circumstance supporting the magistrate's conclusion that probable cause still existed on April 7 was the fact that the place to be searched was the defendants' home. It was not merely a "criminal forum of convenience" but rather a "secure operational base." *Andresen* v. *State,* supra; see also *State* v. *Couture,* 194 Conn. 530, 540–43, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

In circumstances similar to these, other courts have concluded that a delay of a few days in seeking a warrant does not so dilute the likelihood of finding the evidence sought in the place to be searched as to invalidate a finding of probable cause. See, e.g., *People* v. *Mesa,* 14 Cal. 3d 466, 535 P.2d 337, 121 Cal. Rptr. 473 (1975); *Davidson* v. *State,* supra. Some courts have recognized that a delay of a few days may be necessary to protect the confidentiality of the informant's identity. See, e.g., *Kouder* v. *State,* 154 Ga. App. 597, 599, 269 S.E.2d 92 (1980). Where, as here, the affidavit has provided facts from which the magistrate could infer that a continuing criminal enterprise is taking place in a suspect's home, which is more likely to be a "secure operational base" than a hotel room or a car, the passage of only a few days will not inevitably render the information too stale to justify issuance of a warrant.

We conclude, accordingly, that the affidavit's account of a single controlled buy on April 2, in the circumstances of this case, provided a substantial basis for the magistrate's conclusion that illegal drugs would probably be found in the defendants' home five days later. We therefore reverse the judgment of the Appellate Court. Because the Appellate Court found reversible error in the issuance of the search warrant, it did not address five of the defendants' claims on appeal. *State* v. *Johnson,* supra, 42 n.4. The case must therefore be remanded to the Appellate Court for consideration of those claims.

The judgment is reversed and the case is remanded to the Appellate Court for consideration of the defendants' remaining claims.

In this opinion the other justices concurred.