[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TOSUPPRESS.
On February 18, 1994, at approximately 3:00 p.m., members of the Torrington police department narcotics unit executed three search and seizure warrants which had been signed by the Honorable Anne C. Dranginis. The first was for the person of the defendant, Peter Bastianello, Jr.; the second for his business, Burrville Food Center, 2936 Winsted Road in Torrington; and the third was for his automobile, a 1985 Plymouth voyager bearing Connecticut registration 941 EBL. Found on the person of the defendant was $975.75; found in the Burrville Food Center was a quantity of narcotics and paraphernalia, $127, several hand guns, bullets, clips, a scope and related suplies [supplies], records, and a knife; found in the van were two state gun permits and a clip containing 12 rounds of 9 mm ammunition. The motion to suppress as to the van is granted without further discussion and therefore this decision will be concerned only with the store and the person of the defendant.
On April 8, 1994, the defendant filed motions to suppress all the evidence obtained as a result of these three searches, claiming that the affidavit in support of each warrant was insufficient to provide a basis for a finding of probable cause.
In State v. Vincent, 229 Conn. 164, 172, the supreme court restated the duty of a judge in deciding whether to issue a search and seizure warrant stating, "In determining the existence of probable cause to search, the issuing magistrate assesses all of the information set forth in the warrant affidavit and should make a `practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' State v. Johnson,219 Conn. 557, 563, 594 A.2d 933 (1991). Such information must include the `veracity' and the `basis of CT Page 5468 knowledge' of persons supplying hearsay information."Johnson, supra.
That court also recently articulated the standard of review of a magistrate's determination that probable cause existed to issue such warrants in State v. Diaz,226 Conn. 514, 525-27 (1993). Initially, the court noted that, "When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate." State v. Rodriguez223 Conn. 127, 135, 613 A.2d 211 (1992). The court then went on to observe, "We have repeatedly held, therefore, that a reviewing court must uphold `the validity of [the] warrant' . . .[if] the affidavit at issue presented a substantial factual basis [including the inferences reasonably drawn from the affidavit] for the magistrate's conclusion that probable cause existed. . . . State v.DeFusco, 224 Conn. 627, 642, 620 A.2d 746 (1993); Statev. Duntz, 223 Conn. 207, 215, 613 A.2d 224 (1992); Statev. Rodriguez, supra 135; State v. Barton, 219 Conn. 527,544, 594 A.2d 917 (1991). In a doubtful or marginal case. . .our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's. . .conclusion that the affidavit established probable cause . . . ." State v.DeFusco, supra. See also State v. Vincent, supra 172 (1994).
Noting that the inferences drawn by the issuing magistrate must be reasonable, the court then pointed out that such inferences need not be necessary inferences and held: ". . .the substantial basis test means that the reviewing court must give deference to . . . must take as a given. . .all reasonable inferences drawn by the issuing judge, and then decide whether, based upon the facts explicitly stated in the affidavit, supplemented by those reasonable inferences, the affidavit establishes probable cause." (Emphasis in original.) Further, ". . .it is axiomatic that [a] significantly lower quanta of proof is required to establish probable cause than guilt." United States v. Davis, 458 F.2d 819, 821 (D.C. Cir. 1972); see State v. Lamme, 216 Conn. 172, 178, d CT Page 5469579 A.2d 484 (1990). State v. Vincent, supra.
The Torrington police had information which was obtained from concerned citizens and confidential and reliable informants within the past three years that Peter Bastianello sells powder cocaine out of the Burrville Food Center, 2936 Winsted Road, Torrington. Further, that a confidential informant, who was known to the police officers and was registered with the narcotic's unit of the Torrington police department, stated that he/she had made purchases of cocaine in the past from Peter Bastianello at the Burrville Food Center.
As stated in the affidavit,[1] paragraph three, the Torrington police department currently has four other ongoing investigations concerning sales of cocaine by Peter Bastianello at the Burrville Food Center which is owned and operated by him.
A controlled purchase of a quantity of cocaine was arranged under the supervision of two police officers on Friday, January 28, 1994. The same known confidential informant was brought to the area of the Burrville Food Center, searched and given police funds. The known confidential informant then was watched as he/she entered the store by the officers and then watched as he/she left. The known confidential informant thereafter met the two officers and handed one of them a folded packet containing white powder, which had just been purchased from Peter Bastianello while inside the Burrville Food Center. The officer tested the white powder and it was determined to be cocaine. A second supervised purchase of cocaine was made from the defendant at his store on the following Wednesday, February 2, 1994; again on Thursday, February 10, 1994; and finally on Wednesday, February 16, 1994. On each of these four occasions, the known confidential informant was first searched to ensure that he/she was possessing no contraband, given police funds to make the purchase, watched as he/she entered and left the Burrville Food Center. After each purchase, the known informant brought a folded packet of white powder to the awaiting officers which testified positive for cocaine. In each of the four instances, no prior arrangements were made, which corroborates the ongoing nature of the criminal enterprise, and each time the informant who knew CT Page 5470 Peter Bastianello from earlier dealings purchased the cocaine from him. Thus, over a period of two and one half weeks, the informant personally delivered four packets of cocaine which he/she had purchased from the defendant on separate occasions while in his store.
The thrust of the defendant's argument is that the search warrant affidavits lacked probable cause. Specifically, the defendant claims that the affidavits failed to provide the magistrate (Dranginis, j.) with sufficient facts from which she reasonably could have concluded that probable cause existed to issue the warrants. Distilled of rhetoric, the defendant asserts that the affidavits do not disclose how the officers knew that the defendant owns and operates the Burrville Food Center and how they knew that the confidential informant purchased the cocaine from the defendant. In addition, the defendant contends that the affidavits failed to set forth the informants' bases of knowledge and veracity.
As the affiants set forth in paragraph 3, the Torrington police department narcotics unit has been involved in the investigation of illegal drug dealing by the defendant at the Burrville Food Center for about three years. At the time the warrants in this case were prepared, four other ongoing investigations of the defendant's store were in progress. Clearly, it was reasonable for the issuing magistrate to infer that the affiants learned of the relationship of the defendant to the business during the course of these five ongoing investigations since that information is a matter of public record.
The affidavits set forth with some detail the four separate controlled and supervised purchases of cocaine by the confidential informant at the Burrville Food Center. The defendant speculates about a number of improbabilities in an attempt to raise them to a level of concern for the court. The affidavit clearly demonstrates that the confidential informant knew the defendant personally and told the officers of his/her personal drug dealings with the defendant at that store in the past. The affidavits thereafter are replete with references to the confidential informant's having purchased the cocaine from the defendant while in the store as noted above. The CT Page 5471 affidavits also set forth the fact that the confidential informant agreed to make these supervised purchases from the defendant personally. Again, the clear inference is that the confidential informant told the officers after the sale that he/she had purchased the cocaine which the confidential informant turned over to the officers from the defendant.
While the affidavits do not state the bases of the informants' knowledge regarding the initial tips contained in paragraph 3 and the last sentence of paragraph 4 of the affidavits nor the bases upon which the police concluded that those informants were trustworthy, the subsequent investigation and controlled buys provide probable cause.
Initially, in determining whether the known confidential informant was truthful and his/her tip reliable, our Supreme Court noted in Barton, at pages 550-51, that, "The very first circumstance supporting an inference of `veracity' and `reliability' is the fact that the informant is not anonymous. The affidavit states that the informant provided this statement in person at police headquarters. Because his identity was known to the police, the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for the class A misdemeanor of falsely reporting an incident under General Statutes Sec. 53a-180 had the information supplied proved to be a fabrication.
This circumstance thereafter was supplemented by the Torrington police officers' supervision of four controlled and separate purchases of cocaine by the known confidential informant from the defendant at his place of business, the Burrville Food Center on four different dates over a 2 1/2 week period. While the defendant relies on Johnson, supra, to suggest that the four controlled buys were somehow flawed because there is an apartment above the store, unlike Johnson, however, the police had the confidential informant under surveillance from the time they dropped him/her off in the area of the store until the time he/she turned the drugs over to the officers after leaving the store, exclusive, of course, CT Page 5472 of the time he/she was actually in the store making the purchase. Thus, the claim made in Johnson, supra, 564, that the informant could have purchased the drugs from someone other than the defendants because the police "searched him only after he left the multiple unit building, not immediately after he left the defendants' apartment," is of no moment in this case. Similarly, his contention that the known confidential informant had purchased the drugs from a "plant" inside the store is similarly unsupportable in view of the fact that not one, but four separate purchases were made on four separate dates over several weeks.
The present case is similar to the facts underlying the Appellate Court's decision in State v. Toth, 29 Conn. App. 843, cert. denied, 225 Conn. 908 (1993). In upholding the warrant the court stated:
 The first time informant conducted two controlled buys of cocaine under the direction of the affiants at Petrino's and Goulet's homes, two of the same locations at which other informants had said that the defendant stored drugs. The circumstances surrounding these controlled buys matched the information previously supplied by the informant regarding the defendant's method of operation, suggesting the informant did, in fact, have personal knowledge of the numerous earlier drug sales he claimed the defendant had made. This bolstered the first time informant's reliablility; see State v. Rodriguez, 217 Conn. App. 307, 320, 606 A.2d 222 (1992); and helped establish his `general truthfulness or credibility.' State v. Johnson, supra, 568. Based on these facts, the inference drawn by the magistrate that the informant had firsthand knowledge of the defendant's activities was not unreasonable.
Further,
 The defendant argues that because the affidavits fail to provide specific dates and times of the numerous drug purchases referred CT Page 5473 to by the first time informant, they are based on "mere speculation". We do not agree that his informant's failure to provide exact dates of the drug purchases he had made from the defendant was fatal to the affiants' reliance on his information. The `business of dealing in illegal drugs often involves a course of conduct which continues over a long period of time. . .and is usually considered to be a regenerating activity. . . .' Rodriguez, supra, 319. Although the first time informant's claim that the defendant had sold drugs `numerous times' was nonspecific, it indicated that the alleged drugs sales were an ongoing activity. This information was then corroborated by the two controlled buys, and information given by other confidential informants to Bridgeport detectives, as well as information that the defendant was the subject of continuing investigations by both the Statewide Narcotics Task Force and the special services (narcotics) unit of the Stratford police department.
When considering the information available to the magistrate at the time she issued the warrants, it is clear that the facts set forth in the two affidavits and their reasonable inferences gave the magistrate probable cause to believe that there presently existed on the person, premises and things to be searched the fruits, instrumentalities or evidence of the crime of illegal sale of narcotics. The tips furnished by the confidential informants of the defendant's ongoing drug dealing were corroborated by the four controlled purchases of cocaine by a confidential informant from the defendant at his place of business.
For the reasons set forth the motion to suppress as to the premises at 2936 Winsted Road, Torringotn [Torrington], Connecticut and the person of the defendant are denied. It is granted as to the search of the defendant's 1985 Plymouth Voyager, registration 941-EBl.
PICKETT, J. CT Page 5474
Appendix A
1. That I, Officer John W. Murphy am a regular member of the Torrington Police Department, and have been for approximately 6 years. During this time I have been involved and assisted with numerous investigations which have lead to arrests and convictions for, but not limited to the crime of Possession of a Narcotic Substance.
2. That I, Officer Gerald Mosley am a regular member of the Torrington Police Department, and have been for approximately 9 years. During this time I have conducted numerous investigations which have lead to arrests and convictions for, but not limited to the crime of Possession of a Narcotic Substance.
3. That within approximately the past three years it has been known form information received from concerned citizens that Peter Bastianello sells powder cocaine out of the Burrville Food Center, located at 2936 Winsted Road, Torrington Connecticut. Said affiants (Murphy Mosley) have been made aware of this drug dealing through other confidential and reliable informants, and Turn In a Drug Pusher Program. The Torrington Police Departments Narcotics Unit currently have four ongoing investigations pertaining to Peter Bastianello selling cocaine out of the Burrville Food Center.
4. That a confidential informant contacted the Torrington Police Department Narcotics Unit stating that he/she could make controlled purchases of cocaine from Peter Bastianello at the Burrville Food Center and he/she was willing to do so. Shortly thereafter on January 19, 1994 both affiants (Murphy Mosley) met up with said confidential informant and registered him/her with the Torrington Police Department Narcotics Unit. That said confidential informant stated he/she has made purchases of cocaine in the past from Peter Bastianello at the Burrville Food Center.
5. That on January 28, 1994 the aforementioned confidential informant agreed to make a controlled purchase of cocaine from Peter Bastianello at the Burrville Food Center under police supervision. That prior to making said purchase of cocaine, the confidential informant was thoroughly searched by affiant Mosley, CT Page 5475 at which time no illegal contraband was found in his/her possession.
6. That said confidential informant was then given police department money to make said purchase of cocaine from Peter Bastianello at the Burrville Food Center. That once the confidential informant was searched and given the money, he/she was then taken to the area of the Burrville Food Center, located at 2936 Winsted Road where he/she entered the Burrville Food Center, which is owned and operated by Peter Bastianello where he/she purchased cocaine from Peter Bastianello.
7. That said confidential informant was observed entering the Burrville Food Center by both affiants (Murphy Mosley), and he/she was observed exiting the Burrville Food Center. After exiting the Burrville Food Center, said confidential informant met up with both affiants (Murphy Mosley) and handed over a folded packet to affiant (Mosley) containing a white powdery substance that he/she purchased form Peter Bastianello.
8. That after said confidential informant handed over the packet containing the white powdery substance that was purchased form Peter Bastianello, he/she was again searched by affiant (Mosley) for any left over controlled purchase money or contraband and none was found. Affiant (Mosley) field tested the white powdery substance with the Narcotest Disposakit #4, field test for cocaine. Said test results indicated that the white powdery substance purchased form Peter Bastianello was cocaine.
9. That on Wednesday, February 02, 1994 said confidential informant agreed to make a second controlled purchase of cocaine from Peter Bastianello at the Burrville Food Center under police supervision. That prior to making the controlled purchase of cocaine, the confidential informant was thoroughly searched by affiant (Murphy), for any illegal contraband and none was found.
10. That said confidential informant was then given police department money to make said purchase of cocaine form Peter Bastianello. That once the confidential informant was searched and given money, he/she was taken to the area of 2936 Winsted Road, the Burrville Food Center, where he/she entered the Burrville Food Center and made a purchase of cocaine form Peter Bastianello. Said confidential informant was observed entering the Burrville Food Center by both affiants (Murphy Mosley), and he/she was observed exiting the Burrville Food Center. After CT Page 5476 exiting the Burrville Food Center, said confidential informant then met up with both affiants (Murphy Mosley).
11. That after said confidential informant handed over the packet containing the white powdery substance he/she purchased from Peter Bastianello this affiant (Mosley) field tested the white powder with the Narcotest Disposakit # 4, field test for cocaine. Said test results indicated that the white powder in the packet purchased by the said confidential informant from Peter Bastianello was cocaine.
12. That on Thursday, February 10, 1994 said confidential informant agreed to make a third controlled purchase of cocaine from Peter Bastianello at the Burrville Food Center under police supervision. That prior to making the controlled purchase of cocaine, the confidential informant was thoroughly searched by affiant (Murphy), for any illegal contraband and none was found.
13. That said confidential informant was then given police department money to make said purchase of cocaine from Peter Bastianello at the Burrville Food Center. That once the confidential informant was searched and given money, he/she was then taken to the area of the Burrville Food Center, located at 2936 Winsted Road where he/she entered the Burrville Food Center and made a purchase of cocaine from Peter Bastianello.
14. That said confidential informant was observed entering the Burrville Food Center by both affiants (Murphy Mosley), and he/she was observed exiting the Burrville Food Center. After exiting the Burrville Food Center, said confidential informant met up with both affiants (Murphy Mosley) and handed over a folded packet to affiant (Murphy) containing a white powdery substance that he/she purchased from Peter Bastianello.
15. That after said confidential informant handed over the packet containing the white powdery substance that was purchased from Peter Bastianello, he/she was again searched by affiant (Murphy) for any left over controlled purchase money or contraband and none was found. Affiant (Murphy) field tested the white powdery substance with the Narcotest Disposakit # 4, field test for cocaine. Said test results indicated that the white powdery substance purchased from Peter Bastianello was cocaine.
16. That on Wednesday, February 16, 1994 said confidential informant agreed to make a fourth controlled purchase of cocaine CT Page 5477 from Peter Bastianello at the Burrville Food Center under police supervision. That prior to making the controlled purchase of cocaine, the confidential informant was thoroughly searched by affiant (Murphy), for any illegal contraband and none was found.
17. That said confidential informant was then given police department money to make said purchase of cocaine from Peter Bastianello at the Burrville Food Center. That once the confidential informant was searched and given money, he/she was then taken to the area of the Burrville Food Center, located at 2936 Winsted Road where he/she entered the Burrville Food Center and made a purchase of cocaine from Peter Bastianello.
18. That said confidential informant was observed entering the Burrville Food Center by both affiants (Murphy Mosley), and he/she was observed exiting the Burrville Food Center. After exiting the Burrville Food Center, said confidential informant met up with both affiants (Murphy Mosley) and handed over a folded packet to affiant (Murphy) containing a white powdery substance that he/she purchased from Peter Bastianello.
The undersigned has not presented this application in any court or to any other judge.
This application consists of this form plus ____ pages attached hereto and made a part hereof.
Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.
STATE OF CONNECTICUT
________________________________________________________________________ CITY/TOWN | DATE | SIGNATURE AND TITLE OF | | AFFIANT __________________________|____________|________________________________ __________________________|____________|________________________________ __________________________|____________|________________________________ __________________________|____________|________________________________ | | | JURAT 1 | Subscribed and | DATE | SIGNED (Judge of the | sworn to before | | Superior Court) | me on: | | ________|_________________|____________|________________________________ CT Page 5478
19. That alter said confidential informant handed over the packet containing white powdery substance that was purchased from Peter Bastianello, he/she was again searched by affiant (Murphy} for any left over controlled purchase money or contraband and none was found. Affiant (Murphy) field tested the white powdery substance with the Narcotest Disposakit #4, field test for cocaine. Said test results indicated that the white powdery substance purchased from Peter Bastianello was cocaine.
20. That through training and experience said affiants (Murphy Mosley) have found that persons involved in the sale of Narcotics carry weapons to protect their money and supply of drugs, use paging devices to make contact with persons they sell Narcotics to, and now use computers to keep records of drug transactions and money accounts.
21. That based on the facts and circumstances set fourth in this affidavit, said affiants believe probable cause exists to show that powder cocaine is being sold by Peter Bastianello out of the Burrville Food Center, 2936 Winsted Road, Torrington, Connecticut.
22. That during the course of the four controlled purchases made by said confidential informant referred to above no prior ordering of the narcotics was necessary for the purchase. The narcotics were available when the informant went to the premises.
The undersigned has not presented this application in any court or to any other judge.
This application consists of this form plus ____ pages attached hereto and made a part hereof.
Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.
STATE OF CONNECTICUT CT Page 5479
________________________________________________________________________ CITY/TOWN | DATE | SIGNATURE AND TITLE OF | | AFFIANT __________________________|____________|________________________________ __________________________|____________|________________________________ __________________________|____________|________________________________ __________________________|____________|________________________________ | | | JURAT 1 | Subscribed and | DATE | SIGNED (Judge of the | sworn to before | | Superior Court) | me on: | | ________|_________________|____________|________________________________