STATE OF CONNECTICUT *v.* TERRY FRAZIER
(12880)

Lavery, Heiman and Hennessy, Js.

---

Argued May 30—decision released September 19, 1995

*Valerie R. Johnson*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant was charged by substitute information with sale of a narcotic substance in viola-

tion of General Statutes § 21a-277 (a).[1] The defendant was also charged in a separate substitute information with possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) and with possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).[2] These two informations were consolidated for trial before a single jury. After a jury trial, the defendant was found guilty on all counts. The defendant appeals from the judgment of conviction. On appeal, the defendant claims that (1) the trial court improperly denied his motion to sever the charge of sale of narcotics from the charges of possession of narcotics and possession of drug paraphernalia, (2) there was insufficient evidence to convict him of possession of a narcotic substance with intent to sell, and (3) the trial court improperly denied the defendant's motion to suppress. We affirm the judgments of the trial court.

The jury could reasonably have found the following facts. The charge of sale of narcotics, in the second

[1] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] General Statutes § 21a-267 (a) provides: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance as defined in subdivision (9) of section 21a-240. Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor."

information, arose from events that occurred on July 21, 1992. In July, 1992, the New Britain police department was contacted by a confidential informant who provided the police with information regarding a drug dealer who was selling drugs out of apartment 310 at 38 Main Street, New Britain. The informant, who agreed to make a controlled drug buy at that location, met with Detective Frank Colao and Officer William Durkin, members of the New Britain police department, on July 21, 1992. After Durkin searched the informant to ensure that he had no drugs on his person, the informant was given $20 with which to make the controlled drug buy. When the informant knocked on the door of apartment 310, the defendant answered the door. The informant asked the defendant for "a twenty of coke." The defendant, who said he had the coke, went into the apartment and returned to the door with a small plastic bag containing a white powder, which he handed to the informant. The informant gave the defendant $20 and returned to Colao and Durkin, who were waiting outside. Colao and Durkin each saw the informant enter and exit the apartment building. The informant gave Durkin the bag containing the white powder. Durkin field-tested the powder and determined that it was cocaine.

The charges of possession of narcotics with intent to sell and possession of drug paraphernalia, in the first information, arose from events that occurred on August 4, 1992. On the basis of the controlled drug buy, a Superior Court judge issued a search warrant to search apartment 310 and to search "a black male of dark complexion being approximately 25–30 years of age, 5'6" tall and 180 pounds with a flat top hair cut and mustache who is known to reside within the apartment." Durkin, Detective Michael Sullivan and several other New Britain police officers executed the search warrant on August 4, 1992. As the officers exited the

elevator on the third floor of the apartment building, they saw a man who fit the description in the warrant coming toward them from apartment 310. The officers detained him, but let him go when he identified himself as "John." After knocking on the door of apartment 310, identifying themselves as officers and receiving no response, the officers forcibly entered.

Ricky Goins was in the apartment when the officers entered. The description given by Goins of the man who resided in the apartment matched that of the man the officers had encountered in the third floor hall. Durkin apprehended that individual, who identified himself as Terry Frazier, the defendant. Upon searching the defendant, Durkin seized a key that fit the lock to apartment 310.

In searching the bedroom of apartment 310, Sullivan seized from the top of a dresser six bags of cocaine that were inside a cup of rice. He also seized a pill bottle with the name "Terry Frazier" on it that was found approximately six inches from the bags of cocaine. From a shelf in the bedroom closet, Sullivan seized plastic bags and lactose powder. Subsequently, the defendant was arrested. Additional facts will be provided as necessary.

## I

The defendant's first claim is that the trial court improperly denied his motion to sever the charge of sale of narcotics from the charges of possession of narcotics and drug paraphernalia. The defendant argues that he was denied his state and federal constitutional rights to equal protection and the fundamental right to due process and a fair trial because (1) evidence of the alleged sale of narcotics was admitted on the charge of possession of narcotics and (2) the offenses were factually similar and legally related, which made the

evidence cumulative and confusing for the jury. We disagree.

Prior to trial, the state filed a motion to try the sale of narcotics information and the possession of narcotics information together. The state argued that the defendant would not be substantially prejudiced by joinder. The defendant filed a motion to sever the two cases, arguing that joinder would substantially prejudice him. The trial court heard argument by counsel and then denied the defendant's motion to sever and granted the state's motion for consolidation.

Our standard of review in this case is limited to a determination of whether the trial court abused its discretion. "To demonstrate that the trial court abused its discretion, the defendant bears the heavy burden of showing that a denial of severance resulted in a substantial injustice beyond the curative power of jury instructions." *State* v. *Lee*, 32 Conn. App. 84, 106, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993); cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994); *State* v. *Jennings*, 216 Conn. 647, 658, 583 A.2d 915 (1990). Practice Book § 829 gives the trial court the authority to consolidate two or more informations to be tried together. The trial court, therefore, "has broad discretion on whether to join or sever separate charges for trial." *State* v. *Lee*, supra, 106. "The court enjoys broad discretion which, absent manifest abuse, an appellate court may not disturb." *State* v. *Owens*, 25 Conn. App. 181, 193, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991).

Our Supreme Court has acknowledged several factors that the trial court should consider in determining whether severance is required. "These factors include: (1) whether the charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking

conduct on the defendant's part; and (3) the duration and complexity of the trial . . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings*, supra, 216 Conn. 658; see *State* v. *Boscarino*, 204 Conn. 714, 722–23, 529 A.2d 1260 (1987).

As to the first factor, the charges against the defendant in each case involved discrete, easily distinguishable factual scenarios. The events occurred approximately two weeks apart, with the alleged sale of narcotics occurring on July 21, 1992, and the alleged possession of narcotics occurring on August 4, 1992. The circumstances surrounding the two offenses were factually dissimilar. The sale of narcotics involved a controlled drug buy by a confidential informant and the possession of narcotics involved a search of an apartment and seizure of drugs and drug paraphernalia by police. The danger that the jury will use the evidence of one offense in considering guilt of another offense is less where the offenses are factually dissimilar than where they are factually similar. *State* v. *King*, 187 Conn. 292, 302, 445 A.2d 901 (1982).

Also, the state presented the cases to the jury in chronological order, using, with one exception, different witnesses for each case. In its jury instructions, the trial court reminded the jury that the trial involved two separate incidents that allegedly took place on two different dates and instructed the jury that it was to consider each case separately. The state thereby presented a chronologically ordered case in which the jury could distinguish one factual scenario from another.

As to the second factor, none of the charges against the defendant was "of a violent nature or concerned brutal or shocking conduct on the defendant's part

. . . ." (Citations omitted.) *State* v. *Jennings*, supra, 216 Conn. 658. This court has held that charges involving sale of narcotics are not violent in nature. *State* v. *Lee*, supra, 32 Conn. App. 107. The charges here involved the sale and possession of narcotics.

As to the third factor, the trial was neither long in duration nor complex. The trial was completed in eight days and the jury heard testimony from eleven witnesses. Also, the state, as stated previously, presented the evidence in a clear chronological order.

As part of the defendant's first claim, he argues that the admission of evidence of the sale of narcotics in the possession of narcotics case substantially prejudiced him. The defendant further argues that the evidence of the sale of narcotics was inadmissible in the possession of narcotics case and the trial court's ruling it admissible prejudiced him. We disagree.

Although the general rule is that evidence of prior acts of misconduct or involvement in prior crimes is not admissible to show the defendant's bad character or tendency to commit criminal acts; *State* v. *Pollitt*, 205 Conn. 61, 69, 530 A.2d 155 (1987); "such evidence may be offered in proof of an issue in the case, such as intent, identity, malice, motive or a system of criminal activity." Id. In such situations, because the evidence of each crime is admissible to prove the other, the offenses are deemed "legally related."

As to the sale of narcotics, the burden was on the state to prove that the person who sold the cocaine to the informant was the defendant. The defendant claimed that it was a case of mistaken identity and that it was not he who sold the informant the cocaine on July 21, 1992. The subsequent presence on August 4 of cocaine in the apartment, the occupancy of the apartment by the defendant, the testimony that the defendant came from the direction of the apartment when the

police arrived with the search warrant, the identity of the defendant by Goins as the person living in the apartment, the defendant's giving the police a false name, and the location of the pill bottle with the defendant's name on it near the cocaine helped establish that it was the defendant who had sold the cocaine on July 21.

As to the possession of narcotics with intent to sell, the burden was on the state to prove (1) possession of narcotics and (2) intent to sell narcotics. The state used the evidence that the defendant did sell cocaine to the informant from apartment 310 on July 21, 1992, to prove that the defendant intended to sell the cocaine that was seized from the apartment on August 4, 1992. The state also used the evidence that the defendant sold cocaine to the informant on July 21, 1992, to prove that the defendant was in possession of the cocaine that was seized from apartment 310 on August 4, 1992. The state thereby used evidence of the prior sale of narcotics to help establish these elements of the crime in the possession of narcotics case.

Because evidence of each crime was admissible to prove the other, the trial court did not abuse its discretion and the defendant was not substantially prejudiced by joinder.

## II

The defendant's second claim is that there was insufficient evidence on the charge of possession of a narcotic substance with intent to sell. The defendant argues that the state presented no direct proof of his actual possession of the drug and that the circumstantial evidence failed to prove his constructive possession beyond a reasonable doubt. The defendant also argues that there was insufficient evidence to prove intent to sell. We disagree.

"In accordance with well established principles, appellate analysis of a claim of insufficiency of the

evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited. *State* v. *Rollinson*, 203 Conn. 641, 665–66, 526 A.2d 1283 (1987)." (Internal quotation marks omitted.) *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989). "So far as probative force is concerned, there is no legal distinction between direct and circumstantial evidence." *State* v. *Gaynor*, 182 Conn. 501, 506 n.3, 438 A.2d 749 (1980).

The facts underlying this claim are not in dispute. Rather, the defendant now challenges the resultant inferences drawn by the trier of fact as improperly based on speculation and conjecture. See id., 503; *State* v. *Somerville*, 214 Conn. 378, 389–90, 572 A.2d 944 (1990).

A

In order to "prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence and exercised dominion and control over it. *State* v. *Delossantos*, 211 Conn. 258, 277–78, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Cruz*, [28 Conn. App. 575, 579, 611 A.2d 457 (1992)]." *State* v. *Lee*, supra, 32 Conn. App. 98. "Where, as in the present case, the contraband

is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact." *State* v. *Brunori*, 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). "Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' " *State* v. *Alfonso*, supra, 633.

The other statements and circumstances tending to buttress the inference of constructive possession are as follows. First, the defendant sold cocaine to the informant in apartment 310, from which the drugs were seized only two weeks later. Second, within six inches of the cocaine that was seized, the police found a pill bottle with the defendant's name on it. Third, there was evidence that the defendant had been in the apartment shortly before the police searched it, that the defendant resided in the apartment and that the defendant had a key to the apartment. Fourth, the defendant provided a false name to the police when confronted in the third floor hall.

On the basis of the cumulative effect of the foregoing evidence, the jury reasonably could have found that the defendant was in possession of the narcotics and drug paraphernalia seized from apartment 310.

B

Sufficient evidence of the defendant's intent to sell was offered to support his conviction. "Proof of intent is usually established through circumstantial evidence, from which the jury may draw reasonable and logical inferences." *State* v. *Glenn*, 30 Conn. App. 783, 793, 622 A.2d 224 (1993); see *State* v. *Napoleon*, 12 Conn. App.

274, 284, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987). " 'The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs.' " *State* v. *Glenn,* supra, 793.

Expert testimony sufficiently established evidence from which the jury could reasonably have found intent to sell narcotics on the part of the defendant. During the search, the police seized six bags of cocaine in plastic bags. Sullivan and Colao, testifying as experts, stated that the amount of drugs seized, the method of packaging the drugs and type of drug paraphernalia seized was consistent with drug trafficking activities.

In addition to the expert testimony, evidence was also presented as to the location of the apartment and the defendant's prior sale of narcotics. The apartment building was shown to be in a known drug trafficking area, which suggests an intent to sell on the part of the defendant. Id. Also suggestive of the fact that the defendant intended to sell the cocaine that was seized from the apartment is the fact that the defendant had sold cocaine to the informant two weeks prior to the seizure.

On the basis of the foregoing, we hold that there was sufficient evidence for the jury to convict the defendant of possession of a narcotic substance with intent to sell.

### III

The defendant's third claim is that the trial court improperly denied his motion to suppress. The defendant argues that he was denied his rights under the fourth and fourteenth amendments to the United States constitution and under article first, § 7, of the Connecticut constitution because the trial court lacked probable cause to issue the search warrant. We disagree.

"The determination of whether probable cause exists to issue a search warrant under article first, § 7 of our state constitution,[3] and under the fourth amendment to the federal constitution,[4] is made pursuant to a totality of the circumstances test. *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991); *Illinois* v. *Gates*, 462 U.S. 213, 231–32, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Under this test, in determining the existence of probable cause to search, the issuing judge must make a practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 223 Conn. 127, 134–35, 613 A.2d 211 (1992).

"When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. . . . Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and

---

[3] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[4] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." *State* v. *Barton*, supra, 219 Conn. 544–45.

The role of a reviewing court in assessing the validity of a warrant "is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed." (Internal quotation marks omitted.) *State* v. *Toth*, 29 Conn. App. 843, 851, 618 A.2d 536, cert. denied, 225 Conn. 908, 621 A.2d 291 (1993). In a doubtful or marginal case, the preference for a judicial determination of probable cause means that a reviewing judge should defer to the magistrate's findings. *State* v. *Duntz*, 223 Conn. 207, 216, 613 A.2d 224 (1992).

The trial court could reasonably have concluded that the affidavit established the informant's factual basis of knowledge. This court has held that "[a]n informant's personal observation of the events set forth in the affidavit satisfies the basis of knowledge requirement." *State* v. *Torres*, 36 Conn. App. 488, 497, 651 A.2d 1327, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995). The affidavit indicated that the informant had personally observed approximately six ounces of cocaine in the defendant's apartment and that the informant had purchased cocaine from the defendant during a controlled drug buy.

The trial court could reasonably have found that the affidavit established that the informant was reliable. "If an informant has a track record of providing reliable information, the issuing judge may credit the information given in a warrant application." Id. The affidavit indicated that the informant was reliable. He had assisted the police with past investigations by making controlled drug buys and supplying information, which

resulted in the arrest and conviction of at least five persons for drug related charges. The police stated that the information provided by the informant was always found to be true and correct.

The defendant presents three additional arguments in support of his claim that the search warrant was issued without probable cause. The first is that the warrant failed to name the defendant; the second is that there was no undercover police officer present during the controlled drug buy; and the third is that the present case is directly on point with *State* v. *Radicioni*, 32 Conn. App. 267, 629 A.2d 432, remanded for reconsideration, 227 Conn. 921, 632 A.2d 698, rev'd, 33 Conn. App. 903, 633 A.2d 739 (1993).

As to the defendant's first argument, that the search warrant failed to refer to the defendant by name, there is no requirement that a search warrant refer to a person by name in order to establish probable cause. General Statutes § 54-33a (c), which governs the issuance of search warrants, permits a judgment to issue a warrant by "naming or describing the person, place or thing to be searched."

As to the defendant's second argument, that there was no undercover police officer present during the controlled drug buy, *State* v. *Johnson*, 219 Conn. 557, 561, 594 A.2d 933 (1991), applies. In *Johnson*, a search warrant was issued on the basis of a controlled drug buy. Although the police surveillance in *Johnson* was incomplete, our Supreme Court held that the controlled drug buy was not too unreliable to establish probable cause to search the defendant's apartment. Id., 564. The same situation exists in this case. The facts and the basis of knowledge supporting the facts surrounding the drug buy as set forth in the warrant were sufficient for a magistrate to find probable cause.

The defendant's third argument is that this case is directly on point with *Radicioni*. In light of *State* v. *Diaz*, 226 Conn. 514, 628 A.2d 567 (1993),[5] this court reversed its original decision in *Radicioni*. *State* v. *Radicioni*, 33 Conn. App. 903, 603 A.2d 739 (1993). This court originally affirmed the dismissal of charges of, inter alia, possession of marijuana against the defendants in *Radicioni*. On reconsideration, this court reversed the dismissal and remanded the matter for trial. Id.

On the basis of the foregoing reasons, the trial court properly found that probable cause existed to issue the search warrant.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[5] In *State* v. *Radicioni*, 33 Conn. App. 903, 603 A.2d 739 (1993), this court followed the Supreme Court ruling in *State* v. *Diaz*, supra, 226 Conn. 514, holding that we use a "substantial basis" review of an issuing judge's determination of probable cause.